DWIGHT C. HOLTON, OSB # 09054
United States Attorney
District of Oregon
**CRAIG J. GABRIEL, OSB # 012571**
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorneys
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
Telephone: (503) 727-1000
Facsimile: (503) 727-1117
E-mail: Craig.Gabriel@usdoj.gov
Scott.Kerin@usdoj.gov
      Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | CR 08-405-KI |
| v. | **GOVERNMENT'S TRIAL MEMORANDUM** |
| **WINDY N. HARVEY,** | |
| **Defendant.** | Trial Date: August 29, 2011<br>Before: Hon. Garr M. King |

The United States of America, by and through Dwight C. Holton, United States Attorney for the District of Oregon, and Craig J. Gabriel and Scott M. Kerin, Assistant United States Attorneys, respectfully submits the following trial memorandum.

///

///

## PROCEDURAL BACKGROUND AND STATUS OF THE CASE

On August 15, 2008, a criminal complaint was authorized by United States Magistrate Judge Paul Papak charging the defendant, Windy N. Harvey, for the murder of Warren Wallulatum, Jr. The defendant was arrested that same day and made his initial appearance in federal court on August 18, 2008. Following a preliminary hearing, Judge Papak found probable cause existed that the defendant committed the crime and detained him as a danger to the community. On September 10, 2008, a grand jury returned an indictment charging defendant Windy N. Harvey with Murder in the Second Degree, in violation of Title 18, United States Code, Sections 1111 and 1153; Using and Carrying a Firearm During and in Relation to a Crime of Violence, in violation of Title 18, United States Code, Section 924(c); and, Tampering and Attempting to Tamper with a Witness, in violation of Title 18, United States Code, Sections 1512(a)(2)(C) and 1512(a)(3). On September 12, 2008, the defendant was arraigned on the federal charges and his detention was continued. The defendant has entered not guilty pleas to the charges and is currently represented by Robert Reid and Lynne Morgan.

The government has served its subpoenas and will be prepared for trial on August 29, 2011, as scheduled. The government estimates the government's case-in-chief will last about two and a half to three days.

## STATEMENT OF FACTS

In the early morning hours of August 15, 2008, defendant Windy Harvey was sitting in the living room of a home at 1797 Tao-Shuh on the Warm Springs Indian Reservation with Warren Dean Wallulatum, Jr., and three other individuals, Julia Stwyer, Levi Jim and Wamblee Wallulatum. The individuals in the group had been drinking earlier and gradually they all got together at the residence and started listening to music. At one point, defendant Harvey became

**Page 2 - GOVERNMENT'S TRIAL MEMORANDUM**

angry about something Warren Wallulatum, Jr., said about a girl Mr. Harvey was purportedly dating, and in response Mr. Harvey pulled a .40 caliber pistol out of his waistband and fired two shots at Warren Wallulatum, Jr., while Mr. Wallulatum was seated on a couch. Warren Wallulatum, Jr., was shot once in his lower neck/upper chest area and once in the top of his head. After being shot, Warren Wallulatum, Jr., fell to the floor and died. Immediately after he dropped to the floor, Mr. Harvey kicked Warren Wallulatum, Jr., in the head and then pointed his gun at the other people in the room and threatened to shoot them if they told anyone what happened. Mr. Harvey then left.

After killing Warren Wallulatum Jr., Mr. Harvey gave the gun to his dad, Gene Harvey Sr., to hide and hold onto. Mr. Harvey wandered around the Warm Springs Indian Reservation for the rest of the morning and around 7:30 a.m. he showed up at his cousin Alicia Adams' house. He asked for a ride and during the trip he admitted to her that he shot someone in the chest and head. When asked why he shot the person he said that he was with Levi, Wamblee and the victim and they were "punking me" (making fun of him) because the victim has hooked up with Windy's girlfriend. He said they had surrounded him and he felt threatened. Alicia Adams convinced Mr. Harvey he had to turn himself in. Later that day, August 15, 2008, with the assistance of Alicia Adams and Gaylene Adams, Mr. Harvey turned himself in to the Warm Springs Police. The police also obtained the pants Mr. Harvey was wearing at the time of the shooting. A search warrant was executed later that day at the defendant's residence in an effort to find the missing murder weapon. It was not located. The gun that Mr. Harvey used to kill Warren Wallulatum, Jr., was recovered about six months later when the defendant's brother, Gene Harvey Jr., was caught with it in his possession.

**Page 3 - GOVERNMENT'S TRIAL MEMORANDUM**

As the Court will see from a number of the government's photographs, the living room at 1797 Tao-Shuh is relatively small. At the time of the murder Levi Jim, a minor, was sitting on the couch next to the victim. Julia Stwyer and Wamblee Wallulatum were sitting on another couch that was on the other side of the room and next to where the defendant was sitting. The defendant was sitting on a stool in front of the entertainment center and directly in front of the victim.

Following the murder, Warm Springs Tribal Police Officers and a Special Agent with the Federal Bureau of Investigation responded to the scene. Warm Springs Tribal Police Officer Carl Tewee was the first to respond. Officer Tewee entered the residence and found the victim dead on the floor. Warm Springs Police Detectives Jason Schjoll, Gary Samuel, and Sam Williams also responded, as did FBI Special Agent Clayton Smith. After discovering that the victim was dead, the crime scene was cordoned off and processed. Photographs of the crime scene were taken, a diagram was drafted and two .40 caliber bullet casings were recovered from the living room. A subsequent autopsy by Dr. Christopher Ray Young concluded that Warren Wallulatum, Jr., died from multiple gunshot wounds. The bullets fired into the body of the victim were recovered.

Law enforcement officials interviewed Levi Jim, Julia Stwyer and Wamblee Wallulatum.

**Levi Jim**

Levi Jim, who was sitting right next to the victim when the victim was shot , was interviewed on two occasions. The first time he was interviewed within hours of the homicide, and he told the investigators that he was almost asleep and he heard two shots and saw a guy with a handgun run out of the house. About a week later, he was interviewed again and told the investigators that he actually knew more about what happened. Levi Jim told the investigators

**Page 4 - GOVERNMENT'S TRIAL MEMORANDUM**

that Warren Wallulatum, Jr., had been staying with him at their home at 1797 Tao-Shuh sleeping on their couch.  On August 14, 2008, he had been hanging out with Warren Wallulatum, Jr., earlier in the day walking around the Reservation, smoking cigarettes and drinking beer.  Slightly before midnight on August 14, 2008, Warren Wallulatum, Jr., said they should go get Julia Stwyer, who lived nearby.  When they showed up at Julia Stwyer's place she was there with Mr. Harvey and they were drinking.  The group then walked back to Levi Jim's residence, 1797 Tao-Shuh, and went inside to listen to music.  Inside the residence Wamblee Wallulatum was on a couch in the living room and Larrissa Napyer and her two small boys, as well as Nathan Napyer, were sleeping in the bedrooms.

      According to Levi Jim, everyone was sitting down.  Levi Jim was on the couch next to Warren Wallulatum, Jr.  Mr. Harvey was sitting on a stool directly across from them by the entertainment center.  Julia Stwyer and Wamblee Wallulatum were sitting on a couch across the room from Levi Jim and next to Mr. Harvey.  Levi Jim could tell that Mr. Harvey and Warren Wallulatum, Jr., started talking and during a skip in the music he heard Warren Wallulatum, Jr., tell Mr. Harvey that he had sex with "Ippy," a girl Mr. Harvey claimed to be involved with.  Almost immediately, Levi Jim saw Mr. Harvey pull out a handgun from his waistband and point it at Warren Wallulatum Jr., who was still sitting on the couch.  Warren Wallulatum, Jr., said something like "are you going to pull that trigger or not" and to get the gun out of his face.  Mr. Harvey then shot Warren Wallulatum, Jr., two times, killing him.  After being shot Warren Wallulatum , Jr., fell to the floor and Mr. Harvey came over and kicked the victim in the head calling him a "bitch."  Mr. Harvey then pointed the gun at Levi Jim and said you'd better not tell anyone or you're next.  Mr. Harvey then fled.

**Page 5 - GOVERNMENT'S TRIAL MEMORANDUM**

**Julia Stwyer**

Julia Stwyer also saw Mr. Harvey shoot Warren Wallulatum, Jr. She remembers hanging out at her residence and drinking in the carport with Mr. Harvey. Late in the evening of August 14, 2008, Warren Wallulatum, Jr., and Levi Jim came walking by and asked if they wanted to go "kick it" with them at their place, 1797 Tao-Shuh. They agreed to go.

Inside the living room at 1797 Tao-Shuh herself, Mr. Harvey, Levi Jim, Warren Wallulatum, Jr., and Wamblee Wallulatum were all listening to music. She remembers that Mr. Harvey and Warren Wallulatum, Jr., started to argue about a girl they had both dated named Rolanda Williams ("Ippy"). Rolanda Williams was purportedly 14. The argument only lasted a short time and then suddenly Mr. Harvey pulled out a handgun and shot Warren Wallulatum two or three times while he was sitting on the couch. After being shot, the victim feel to the floor and Mr. Harvey ran out the door.

**Wamblee Wallulatum**

Wamblee Wallulatum was also present for the shooting and, shortly after the incident, he made a detailed statement to investigators that paralleled what the other witnesses said. At the present time, however, Wamblee Wallulatum apparently has serious mental health, drug, and alcohol issues. Wamblee Wallulatum therefore does not appear to be a competent witness and the government has no intent to call him as one. During a recent meeting with investigators, Wamblee Wallulatum confirmed he was taking medication for a mental illness and proceeded to talk about how he had recently fought with Bigfoot, been involved in the Hillsboro military and fought in three wars, and how he had been in the Lord of the Rings movies and had used an ax to kill people and also picked up the dead bodies from the battles depicted in the movies.

**Page 6 - GOVERNMENT'S TRIAL MEMORANDUM**

The defense has informed the government that they intend to argue that Mr. Harvey acted in self defense.

## ELEMENTS OF THE OFFENSE

**A.    Count 1: Murder in the Second Degree.**

The defendant is charged in Count 1 of the indictment with Murder in the Second Degree in violation of Section 1111 and 1153 of Title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt: First, the defendant unlawfully killed Warren Wallulatum, Jr.; Second, the defendant killed Warren Wallulatum Jr. with malice aforethought; Third, the defendant and/or Warren Wallulatum, Jr., were Indian; and, Fourth, the killing occurred at the Warm Springs Indian Reservation.

To kill with malice aforethought means to kill either deliberately and intentionally or recklessly with extreme disregard for human life.

Because the third element, Indian Status, is a factual and jurisdictional element of the crime, the government is also required to prove beyond a reasonable doubt: that the defendant has descendant status as an Indian, such as being a blood relative to a parent, grandparent, or great-grandparent who is clearly identified as an Indian from a federally recognized tribe, and there has been tribal or federal government recognition of the defendant as an Indian. Whether there has been tribal or federal government recognition of the defendant as an Indian is determined by considering four factors, in declining order of importance, as follows:

1.    tribal enrollment;

2.    government recognition formally and informally through receipt of assistance reserved only to Indians;

**Page 7 - GOVERNMENT'S TRIAL MEMORANDUM**

      3.      enjoyment of the benefits of tribal affiliation; and

      4.      social recognition as an Indian through residence on a reservation and participation in Indian social life.

It is anticipated that the defense will stipulate to the Indian Status of both the defendant and the victim.

**B.    Count 2: Using or Carrying a Firearm in Commission of a Crime of Violence.**

The defendant is charged in Count 2 of the indictment with using and/or carrying a firearm during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, in violation of Section 924(c) of Title 18 of the United States Code.  In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt: First, the defendant committed the crime of Murder in the Second Degree as charged in Count 1 of the indictment, which, as matter of law, is a crime of violence; and Second, the defendant knowingly used and carried a firearm during and in relation to that crime.

A defendant "used" a firearm if he actively employed the firearm during and in relation to the crime of violence. A defendant "carried" a firearm if he knowingly possessed it and held, moved, conveyed or transported it in some manner on his person.  A defendant used or carried a firearm "during and in relation to" the crime if the firearm facilitated or played a role in the crime.

Title 18, United States Code, Section 924(c) punishes the use or carrying of a firearm during and in relation to any federal felony crime of violence.  Currently, there are no lesser included offenses that are alleged and thus, the jury instruction on the 924(c) charge only references the crime of Murder in the Second Degree, a federal felony crime of violence.  Should

**Page 8 - GOVERNMENT'S TRIAL MEMORANDUM**

the defendant request and/or the Court decide to instruct the jury on a lesser included crime of violence, such as Voluntary or Involuntary Manslaughter, the jury instruction will need to be modified accordingly.  *See, e.g.*, *United States v. McCoy,* 496 F.3d 853, 854 (9th Cir. 2007) (where defendant charged with murder and use of a firearm in a crime of violence his conviction for the lesser included offense of voluntary manslaughter qualified as a crime of violence and supported his conviction under 18 U.S.C. § 924(c)); *United States v. Springfield*, 829 F.2d 860, 863 (9th Cir. 1987) (where defendant was charged with murder and use of a firearm in a crime of violence his conviction for the lesser included offense of involuntary manslaughter qualified as a crime of violence and supported his conviction under 18 U.S.C. § 924(c)).

C.      **Count 3: Tampering and Attempting to Tamper with a Witness.**

The defendant is charged in Count 3 of the indictment with Tampering with and Attempting to Tamper with a Witness, in violation of Section 1512 of Title 18 of the United States Code.  In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, that the defendant knowingly used or attempted to use the threat of physical force against Julia Stwyer, Levi Jim or Wamblee Wallulatum; Second, that the defendant acted with intent to hinder, delay or prevent Julia Stwyer, Levi Jim or Wamblee Wallulatum from communicating to law enforcement authorities information related to the commission or possible commission of an offense; Third, the offense was a federal offense; and, Fourth, the defendant believed that Julia Stwyer, Levi Jim or Wamblee Wallulatum might communicate with law enforcement authorities.

////

**Page 9 - GOVERNMENT'S TRIAL MEMORANDUM**

## EVIDENTIARY MATTERS

**A.     Stipulations.**

The parties have agreed in principle to various stipulations regarding forensic and physical evidence, Indian Status of the defendant and victim, as well as foundational issues related to Warm Springs Tribal Court records, Warm Springs Tribal Police records, and State Court records. We anticipate that the final wording of the stipulations will be worked out in advance of trial.

**B.     Expert Testimony.**

The government intends to call Dr. Christopher Ray Young, the medical examiner who conducted the autopsy of Warren Wallulatum, Jr. His report was provided to the defense in discovery. Dr. Young will testify about the injuries suffered by the victim and that the cause of death was multiple gunshot wounds. Dr. Young will also lay the foundation for the introduction of the bullets used to kill the victim and for a number of photographs depicting the victim's wounds, which the government believes will assist in proving that the defendant did not act in self defense. Dr. Young's expert testimony is admissible pursuant to FRE 402 and 702.

Depending on the ability of the parties to reach stipulations on forensic evidence such as ballistics, fingerprints, and DNA evidence, the government may also call forensic scientists from the Oregon State Police crime lab to testify in its case-in-chief or in rebuttal. The government has previously provided the defense with discovery related to the completed forensic testing. In preparation for trial, the Oregon State Police crime lab has continued its forensic testing of the evidence in this case. Any additional forensic reports received by the government from the crime lab will be immediately provided to defense counsel.

C.     **Character Evidence and Prior "Bad Acts" of the Victim.**

In advancing their claim of self-defense, the defense has informed the government that they intend to present testimony and reports documenting the victim's purported character for violence and other "bad acts" he has committed. The government has submitted a separate Motion in Limine to address this issue.

D.     **Impeachment of Government Witnesses.**

The government has filed a Motion in Limine to exclude irrelevant and inadmissible evidence during the cross-examination of government witnesses.

E.     **Admissibility of Crime Scene and Autopsy Photographs.**

The government intends to offer a number of photographs depicting the crime scene and the body of Warren Wallulatum, Jr. These photographs are being offered to show how the murder happened, the room in which the crime occurred, the proximity of the witnesses to the shooting, the cause of death, to assist with the medical examiner's testimony, and to prove that the defendant murdered Warren Wallulatum, Jr., and did not act in self defense. Such evidence is relevant and admissible under FRE 401 and 402. The admission of such crime scene photographs "lies largely within the discretion of the trial court." *Batchelor v. Cupp*, 693 F.2d 859, 865 (9th Cir.1982). Admission of photographs that are relevant to the elements of a charge, even if graphic and gruesome, do not violate due process. *Villafuerte v. Lewis,* 75 F.3d 1330, 1343 (9th Cir.1996).

F.     **Self Defense.**

Here, the defense has informed the government that they intend to argue that the defendant acted in self defense. A defendant is entitled to have the jury instructed on his or her theory of defense, as long as the theory has support in the law and some foundation in the

**Page 11 - GOVERNMENT'S TRIAL MEMORANDUM**

evidence presented at trial. *United States v. Perdomo-Espana*, 522 F.3d 983, 986-87 (9th Cir. 2008), *cert. denied*, 128 S. Ct. 2984 (2008). Should the evidence warrant a self-defense instruction, we ask the Court to use the Ninth Circuit Model Jury Instruction 6.8 (2010), which states that:

> The defendant has offered evidence of having acted in self-defense. Use of force is justified when a person reasonably believes that it is necessary for the defense of oneself or another against the immediate use of unlawful force. However, a person must use no more force than appears reasonably necessary under the circumstances.
>
> Force likely to cause death or great bodily harm is justified in self-defense only if a person reasonably believes that such force is necessary to prevent death or great bodily harm.
>
> The government must prove beyond a reasonable doubt that the defendant did not act in reasonable self-defense.

The Ninth Circuit has repeatedly affirmed the use and wording of the Model Jury Instruction. *See United States v. Morsette*, 622 F.3d 1200, 1202 (9th Cir.2010) ("the model jury instruction remains correct"); *United States v. Keiser*, 57 F.3d 847, 851 (9th Cir. 1995) (same). Where self defense is raised, "the prosecution [has] the burden of proving beyond a reasonable doubt that the defendant had not acted in reasonable self-defense." *Id.*, at 850-52. The jury must unanimously reject the defendant's self-defense theory in order to find the defendant guilty. *United States v. Ramirez*, 537 F.3d 1075, 1083 (9th Cir. 2008).

G.     **FRE 404(b).**

The government has given notice to the defense that it is the government's position that all of the evidence it intends to offer, as outlined in the discovery provided to the defense, is inextricably intertwined with the charged offenses in this case. Therefore, at this time the government is not relying on FRE 404(b) for the admission of any evidence in its case-in-chief.

Of course, during defendant's testimony, he may open the door to the admission of evidence on cross-examination that otherwise would not have been admissible at trial.

Dated this 15th day of August 2011.

Respectfully submitted,

DWIGHT C. HOLTON
United States Attorney

*/s/ Craig J. Gabriel*
Assistant United States Attorney

*/s/ Scott Kerin*
SCOTT M. KERIN
Assistant United States Attorney
