DWIGHT C. HOLTON, OSB 09054
United States Attorney
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
**CRAIG J. GABRIEL, OSB # 012571**
Assistant United States Attorney
United States Attorney's Office
1000 S.W. Third Ave., Suite 600
Portland, OR  97204
(503) 727-1000
Scott.Kerin@usdoj.gov
Craig.Gabriel@usdoj.gov
        Of Attorneys for the United States

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 08-405-KI** |
| **v.** | **GOVERNMENT'S RESPONSES TO DEFENDANT'S PRETRIAL MOTIONS (CR Nos. 95 - 115)** |
| **WINDY N. HARVEY,** | |
| **Defendant.** | |

        The United States of America, through Dwight C. Holton, United States Attorney for the

District of Oregon, and Scott M. Kerin and Craig J. Gabriel, Assistant United States Attorneys,

hereby files the this consolidated response to the defense's pretrial motions (CR 95, 96, 97, 98,

99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115).

        A.        **Motion *in Limine* to Exclude Allegations of Underage Sex (CR 95)**

        The defense has moved *in limine* to exclude allegations that the defendant had sex with

an underage girl.  The government's eyewitnesses in this case will testify that while several

people were in a house on the Warm Springs Indian Reservation, defendant Harvey became

angry about something Warren Wallulatum, Jr., said about a girl Mr. Harvey was purportedly dating, and in response Mr. Harvey pulled a .40 caliber pistol out of his waistband and fired two shots at Warren Wallulatum, Jr., while Mr. Wallulatum was seated on a couch.

The government believes that the dispute over the girl Mr. Harvey was purportedly dating at the time of the homicide is relevant to defendant's motive in shooting the victim.  The government agrees with the defense, however, that the fact that the girl was 14 years old and Mr. Harvey was 26 years old at the time is not relevant.  The government therefore does not intend to offer any evidence at trial of allegations that Mr. Harvey had sex with an underage girl prior to the homicide in this case.  If, however, the defense opens the door to the admissibility of such evidence during the course of trial, the government reserves the right to seek leave to revisit the issue.  For the foregoing reasons, the government respectfully requests that the defendant's motion to exclude allegations of underage sex be denied as moot.

### B.    Motion *in Limine* to Exclude Tribal Court Convictions of Defendant (CR 96)

The defense has moved *in limine* to exclude defendant's tribal court convictions under FRE 609.  The government does not intend to impeach the defendant with his tribal court convictions unless he opens the door to it, so the defendant's motion should be denied as moot. If the government believes the defendant has opened the door to the use of his tribal court convictions we will bring the matter to the Court's attention.

If, however, the defense calls character witnesses to testify that the defendant is law-abiding, then the government would be permitted to ask those witnesses about their knowledge of defendant's tribal court record and arrests, as "[o]n cross-examination, inquiry is allowable into relevant specific instances of conduct."  FRE 405(a).  Similarly, if the defense opens the

door to the admissibility of such evidence during the course of trial, the government reserves the right to seek leave to revisit the issue.

### C.    Motion *in Limine* to Exclude Witnesses, and Related Orders (CR 97) and Motion to Seal Factual Support for Objection to Multiple Government Case Agents (CR 98, 113)

The defense has moved *in limine* for various limitations on who may be present in the courtroom during trial.  The defendant raises five separate issues.

1.    The government has no objection to the exclusion of witnesses, pursuant to FRE 615, with the exception of our two co-case agents, as noted below.

2.    The government seeks, pursuant to FRE 615, to have two co-case agents present at counsel table during the trial: FBI Special Agent Clayton Smith and Warm Springs Tribal Police Detective Gary Samuel.  The government believes that both witnesses are essential to the government's presentation of its case and thus exempt from exclusion under FRE 615.  While it is difficult to respond to defendant's sealed allegations seeking to limit the government to only one case agent, we can tell the Court that Special Agent Smith and Detective Samuel had different focuses during the investigation of the case and have different knowledge that we believe is essential to helping us present our case and responding to the defendant's voluminous number of exhibits.  Special Agent Smith and Detective Samuel both responded to the crime scene and both helped interview witnesses.  Special Agent Smith primarily focused on the forensic evidence in the case, his assistance while the defense experts are testifying is essential. Detective Gary Samuel, a veteran law enforcement officer who has spent over 25 years on the Warm Springs Indian Reservation, focused primarily on the civilian witnesses and has historical knowledge that we believe is necessary to help us sort though the defendant's voluminous police reports they intend to offer at trial.  FRE 615 clearly permits multiple case agents or

representatives being present during trial.  *See* FRE 615; *Breneman v. Kennecott Corp.*, 799 F.2d 470, 474 (9th Cir. 1986) (two company representatives allowed); *United States v. Alvarado*, 647 F.2d 537, 540 (5th Cir.1981) ("decision as to how many will be excused from sequestration is just as discretionary with the trial judge as who will be excused."); J. Weinstein and M. Berger, 3 *Weinstein's Evidence* ¶ 615[02] at 615-9 (1985) ("There must be wide discretion in the trial judge to allow multiple representatives.").  Here, we ask the Court to deny defendant's motion.

3.    The government has no objection to the Court instructing witnesses not to discuss testimony given during its case-in-chief with any other witnesses.  Such an instruction is normal and one we commonly give to our witnesses as a matter of course.  The government, however, asks the Court to allow us to discuss facts presented during the defendant's case with individuals to determine whether any rebuttal witnesses are necessary.

4.    The government has no objection to the defendant's investigator being present in the Courtroom.

5.    The victim in this case is dead.  His mother or family members may be present, as is their right, and the government believes that the defense attorneys are free to talk with them and identify them to the Court as they deem necessary.

**D.    Motion to Allow Forensic Witnesses to Attend Relevant Portions of Testimony and for Transcript Access (CR 99)**

Notwithstanding their motion to exclude witnesses under FRE 615, the defense also has moved to allow its forensic witnesses to attend portions of the government's case-in-chief.  As long as the defense attorneys can articulate why they believe the witnesses are essential to the presentation of their case, they are exempt from exclusion under FRE 615.

E.    **Motion *in Limine* for Bill of Particulars Clarifying Government's Theory of Case (CR 100)**

The defense has moved *in limine* for a bill of particulars clarifying the government's theory of the case. The government has reviewed the defendant's motion and plans to present a superseding indictment to the grand jury in advance of the pretrial conference clarifying the charges against the defendant, as he requests. To the extent the defendant has further concerns about the superseding indictment, such concerns can be dealt with at the pretrial conference, through the discovery that he has been provided and through jury instructions, including the use of a specific unanimity instruction under Ninth Circuit Model Jury Instruction 7.9.

F.    **Motion to Exclude Testimony of Jail House Informant L.L.T. (CR 101)**

The defense has moved to exclude the testimony of L.L.T., an inmate who was in custody with Mr. Harvey while both of them were awaiting trial in separate federal criminal cases. The government has complied with all of its discovery obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), FRCrP 16, and 18 U.S.C. § 3500 (*Jencks*). There is no reason to exclude L.L.T.'s testimony from trial.

The government interviewed L.L.T. in February 2011, in the presence of his lawyer, David Audet. At that time, L.L.T. provided incriminating evidence against Mr. Harvey. Since L.L.T.'s interview, Assistant United States Attorney Kemp Strickland has attempted to secure L.L.T.'s testimony at Mr. Harvey's trial by engaging in plea negotiations with Mr. Audet. L.L.T., however, had not agreed to testify at Mr. Harvey's trial, and the government was not planning on using L.L.T. as a witness, because he simply was not available for us to call.

Much of L.L.T.'s reluctance about testifying as a cooperating witness centered on his fear that he would be threatened and assaulted in prison if he were considered a "snitch." The

government therefore had an interest in protecting L.L.T.'s status until we knew whether he would, in fact, be a witness at Mr. Harvey's trial.  Unfortunately, L.L.T.'s fears have been realized: the defense's instant motion uses L.L.T.'s full name and labels him a "Jail House Informant."  Filing such a pleading is deeply irresponsible, because (as the defense well knows) such paperwork is frequently passed around prisons and used to intimidate, threaten, and assault cooperating witnesses.  At the pretrial conference, the government will move the court to redact L.L.T.'s name from the defense motion (CR 101).

Over the past couple months, the attorney-client relationship between L.L.T. and David Audet broke down irrevocably.  Based on the mere possibility that L.L.T. may be a witness at the Harvey trial, on August 5, 2011, the government provided the defense with L.L.T.'s  interview report, his criminal history report, and his driving history report.  The defense therefore had this information about a *potential* witness over three weeks prior to Mr. Harvey's trial.  On August 9, 2011, L.L.T. appeared before this court and received a new lawyer, Russell Barnett.  Mr. Barnett subsequently told the government that L.L.T. would, in fact, be interested in cooperating against Mr. Harvey in exchange for sentencing concessions.  Late last week, Mr. Barnett scheduled a change of plea hearing for L.L.T. for August 22, 2011.  Immediately after L.L.T.'s plea hearing, the government will provide Mr. Harvey's attorneys with L.L.T.'s plea agreement and cooperation agreement.

As the above chronology shows, the government did not withhold information from the defense to gain a strategic advantage.  To the contrary, L.L.T.'s reluctance to testify, his legitimate security concerns, and his recent substitution of counsel caused him to delay his decision to agree to cooperate in this case.  The government has fulfilled its discovery obligations in this case by providing information regarding L.L.T. in a timely manner (over three weeks prior

to trial); indeed, the information was provided to the defense even before the government knew L.L.T. would be a witness. As the government did not act maliciously or in bad faith, if the defense believes they need additional time to prepare for trial, the proper remedy is not to exclude a witness, but to grant a defense request for a reasonable continuance. The government would not object to such a defense request.

Finally, the government feels compelled to highlight the irony of the defense's motion to exclude L.L.T.'s testimony, as the defense themselves have yet to provide summaries of the testimony of the three expert witnesses they intend to call at trial, despite government requests for this information.

The defense's motion to exclude L.L.T.'s testimony is without merit and should be denied.

### G.    Motion *in Limine* to Exclude Exculpatory Letters and Related Testimony (CR 102)

The defense has moved *in limine* to exclude purportedly exculpatory letters and related testimony. Unless the defense opens the door to such evidence, the government does not intend to introduce any testimony or exhibits related to the letters. The defense's motion should therefore be denied as moot.

### H.    Motion *in Limine* to Exclude Evidence Relating to Marijuana Metabolites in Urine (CR 103)

The defense has moved *in limine* to exclude evidence relating to marijuana metabolites in the defendant's urine. The government has previously informed defense counsel that we do not intend to offer such evidence at trial, unless, of course, the defense opens the door to the admission of the marijuana evidence. The defense's motion should therefore be denied as moot.

///

## I.    Motion *in Limine* to Exclude Evidence as to Lack of Gun Permit (CR 104)

The defense has moved *in limine* to exclude evidence that the defendant lacked a tribal permit to carry a handgun.  Unless the defense opens the door to such evidence, the government does not intend to introduce any testimony or exhibits related to the defendant's failure to obtain a handgun permit.  The defense's motion should therefore be denied as moot.

## J.    Motion *in Limine* to Exclude Evidence of Defendant's Incarceration Prior to Shooting (CR 105)

The defense has moved *in limine* to exclude evidence that defendant was in tribal custody from approximately July 23, 2008, to August 14, 2008, just hours before the homicide in this case.  The government has previously informed defense counsel that we do not intend to offer evidence of defendant's incarceration at trial, unless, of course, the defense opens the door to the admission of such evidence.  The defense's motion should therefore be denied as moot.

## K.    Motion in Limine to Exclude Gruesome Photographs from Evidence (CR 106)

The defense has moved in limine to exclude "gruesome photographs" from evidence, unless the governments lays the factual foundation as to why each photograph is needed and the court employs a balancing test under FRE 403.  This is a murder case in which the defendant is claiming both self defense and that the crime scene was improperly processed.  As noted in the government's trial memorandum, the photographs the government intends to use at trial are relevant to proving that the defendant murdered Warren Wallulatum, Jr., that the defendant did not act in self defense, that the crime scene was adequately processed, and that the defendant's story is unsupported by the physical evidence.  Should the Court require additional information

prior to trial about the relevance of the individual photographs, we would ask for permission to
provide it to the Court outside the presence of the defendant and his counsel.

> **L.    Defendant's Objection to Inference Instructions (CR 107)**

The defense objects, generally, to any and all "inference instructions," but he has not
specified which, if any, of the government's requested instructions he has concerns about.  The
government has submitted Ninth Circuit Model Jury Instructions, with the exception of the
instruction on Tampering with a Witness for which there was no Ninth Circuit Model Instruction.
The instructions are proper, lawful and have been approved and used throughout the circuit.  We
ask the Court to deny defendant's motion.

> **M.    Motion *in Limine* to Permit Sealed Record and Related Witness Protection
> Measures (CR 108)**

The defense has moved *in limine* to adopt what they call various "witness protection
measures" to include: sealing of defense witness testimony; issuance of an order that no person in
the courtroom can talk about what a witness says, except as necessary to conduct the case; and,
excluding members of the public from the courtroom during various testimony.  Defendant has
failed to identify any specific witness in need of their requested measures and has failed to
provide any legal support for their requests.  Their motion should be denied.

As a general matter, in every trial, the testimony of witnesses must be taken in open court.
Fed. R. Crim. P. 26.  The reason for such a rule is that the concept of the jury trial is rooted in the
fundamental belief that "an open public trial is a shared right of the accused and the public."
*Press-Enterprise Co. v.  Superior Court*, 478 U.S. 1, 7 (1986) (reversing decision that denied the
media access to transcripts of a preliminary hearing).  While there are exceptions to public

testimony and public proceedings, they are very rare and the burden to justify them is high and

squarely upon the party seeking to do so:

> The Supreme Court has made clear that criminal proceedings and
> documents may be closed to the public without violating the first
> amendment only if three substantive requirements are satisfied: (1) closure
> serves a compelling interest; (2) there is a substantial probability that, in
> the absence of closure, this compelling interest would be harmed; and (3)
> there are no alternatives to closure that would adequately protect the
> compelling interest.  The court must not base its decision on conclusory
> assertions alone, but must make specific factual findings.

*United States v. Bragon*, 510 F.3d 844, 848 (9th Cir. 2007) (denying request to seal
sentencing hearing discussing cooperation).

When concerns about public proceedings arise, the general manner for the Courts

to deal with them is to focus on laying down rules for those who attend the trials, not to

close the proceedings or restrict the public's access to those proceedings.  *See Press-*

*Enterprise*, 478 U.S. at 8. Sealing testimony, restricting who can say what about

testimony, and sealing a courtroom may be appropriate in some very limited

circumstances, but only if it is based upon specific findings that such measures are

necessary to preserve higher values and the restrictions are narrowly tailored to serve

those interests.  On defendant's motion, the Court cannot make such findings or

conclusions.  We ask the Court to deny defendant's motion at this time.

### N. Motion *in Limine* to Require References to Deceased to Be Consistent with Presumption of Innocence (CR 109)

The defense has moved *in limine* to require the government to refrain from

referring to Warren Wallulatum, Jr., as the "victim" before the jury, until closing

argument in this case.  The government agrees not to refer to Mr. Wallulatum as the

"victim" until closing argument, so defendant's motion should be denied as moot.

**O.    Objection to Jury Instruction on Flight (CR 110)**

The defense objects to any jury instruction allowing an inference to be drawn between flight and guilt.  The government has not asked for such an instruction.  The government believes the matter is best left for closing argument and therefore recommends that such a "flight" instruction not be given to the jury.

**P.    Objection to Jury Instruction Inferring Malice Aforethough from Weapon Usage (CR 111)**

The defense objections to any jury instruction allowing an inference to be drawn between the use by the defendant of a firearm with malice aforethought.  The government has not asked for such an instruction.  The government believes the matter is best left for closing argument and therefore recommends that such an instruction not be given to the jury.

**Q.    Request for Judicial Notice as to Difference in Tribal and Federal Court System (CR 112)**

The defense has requested judicial notice as to the difference between the tribal and federal court systems.  The government has no objection to the jury being told about the Warm Springs Tribal Courts and its legal system.  The government would ask, however, in order that the jury have a full understanding of the interplay between Tribal Courts and the federal courts that the jury also be told that the federal courts have jurisdiction over certain types of Major Crimes and General Jurisdictional Crimes occurring on the Warm Springs Indian Reservation and that those crimes are delineated by statute.  *See* 18 U.S.C. §§ 1152 and 1153.

**R.    Request for Judicial Notice as to Potential Tribal Jail Sentences (CR 114)**

The defense has requested that the court take judicial notice of the fact that the

Warm Springs tribal court system can impose sentences of only one year in jail or less.

The government has no objection.

**S.      Memorandum of Law: Use and Admissibility of Defense Video
Exhibit (CR 115)**

The defense seeks to admit a video that purportedly re-enacts the shooting in this

case, presumably as described by the defendant.  The government received this video less

than one week ago.  Provided, however, that the defense can lay a proper foundation, the

video may be properly used as a demonstrative exhibit.  Generally, demonstrative exhibits

are not sent back to the jury as a substantive exhibit and doing so is highly "discouraged"

by the appellate courts.  *United States v. Cox*, 633 F.2d 871, 874 (9th Cir. 1980).  As the

Ninth Circuit has noted:

> It would appear to be the better practice in a case of this sort to
> have excluded the illustrative evidence from the jury room.  The
> role of such evidence is preferably that of a testimonial aid for a
> witness or as an aid to counsel during argument.  Otherwise
> evidence of this sort may cause error in that it can present an unfair
> picture of the testimony at trial and can be a potent weapon for
> harm due to its great persuasiveness.

*Id*.

///


///


///

Here, the defense video is not evidence from the scene and its validity will be actively disputed by eyewitness testimony, forensic testimony, and physical evidence. To submit the video to the jury as substantive evidence is improper and runs the risk of placing too much emphasis on only one side of the story. We ask the Court to deny defendant's request to treat their video as substantive evidence and we further ask the Court to instruct the jury accordingly.

DATED this 22nd day of August, 2011.

Respectfully submitted,

DWIGHT C. HOLTON
United States Attorney


*/s/ Scott M. Kerin*
SCOTT M. KERIN, OSB # 965128
Assistant United States Attorney
CRAIG J. GABRIEL, OSB # 012571
Assistant United States Attorney